No. 44,182

TECUMSEH SCHOOL DISTRICT NO. 7, SHAWNEE COUNTY, et al. (147 additional School District), *Appellants*, v. ADEL F. THROCKMORTON, State Superintendent of Public Instruction, *Appellee*.

(403 P. 2d 102)

Opinion filed June 12, 1965.

*Charles Rooney, Sr.,* of Topeka, argued the cause and was on the briefs for appellants.

*J. Richard Foth,* Assistant Attorney General, of Topeka, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Frederic J. Carman,* Special Assistant Attorney General, of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to enjoin the state superintendent of public instruction from carrying out duties under the act known as the School Unification Law, enacted by the 1963 regular session of the legislature.

The 148 plaintiffs are school districts of various types located in many counties of the state. The plaintiffs challenged the constitutionality of Chapter 393 of the 1963 Laws of Kansas which is now K. S. A. 72-6734 *et seq.* The district court held this act to be constitutional and valid. The plaintiffs appealed to this court, and because the case involves a pressing public question, the court announced its decision at an early date so that the parties and the legislature were advised. (*Tecumseh School District v. Throckmorton,* 194 Kan. 519, 403 P. 2d 102.)

The statute questioned by appellants provides for reorganization of the school districts of the state. At the time of enactment, there were some 1843 public school districts of many different types but chiefly common school districts offering grades 1 to 8, high school districts offering grades 9 to 12, and city school districts offering grades 1 to 12. Each high school district overlays all or part of one or several common school districts. The act would cause all of the school territory of the state to be reorganized into unified school districts offering grades 1 to 12 and disorganizing the old districts.

Appellants primarily contend that the statute makes an unlawful delegation of legislative power to the state superintendent of public instruction. Other contentions will be noted later in this opinion. The gist of appellants' main argument is that the act vested legislative power in the state superintendent to organize new public school districts without consent of local school officials or local voters; that the state superintendent need not act uniformly and may overrule the desire of voters expressed at elections on establishing new districts; that this is the exercise of legislative power and therefore in violation of Article 2, Section 1 of the Kansas Constitution.

The establishment or creation of school districts is a function which is legislative in character. This court has so held repeatedly. (*State, ex rel., v. Storey,* 144 Kan. 311, 58 P. 2d 1051; *State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865; *School District, Joint No. 71 v. Throckmorton,* 189 Kan. 590, 370 P. 2d 89.) Moreover, school districts are purely creatures of the legislature and subject not only

to its power to create but its power to modify or dissolve. (*State, ex rel., v. French,* 111 Kan. 820, 208 Pac. 664; *State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677.)

The enactment in question authorizes the state superintendent to establish unified school districts and disorganize other districts, either if an election has been held approving the establishment or if certain local school boards petition for the establishment. Such a petition may be submitted and acted upon even though electors have voiced disapproval. Appellee has conceded that this is a delegation of power of grave importance, and that it may be a function that is legislative in character. We hold that at least some of the powers delegated to the state superintendent of public instruction are legislative.

Appellants rely on *State, ex rel., v. Hines,* supra; *School District Joint No. 71 v. Throckmorton,* supra, and *State, ex rel., v. Hardwick.* 144 Kan. 3, 57 P. 2d 1231, in support of their position that the delegation made is unlawful. The difficulty with their position is that none of those cases involved a delegation of legislative power to the state superintendent of public instruction. The *Hines* and *Throckmorton* cases considered and disapproved delegation of legislative power to local boards for school planning. The *Hardwick* case concerned delegation of power to a county tribunal to prevent soil erosion. Neither of those cases passed upon the point now before the court, *i. e.,* delegation to the state superintendent of public instruction of legislative power with respect to the establishment and disorganization of school districts.

The question before the court is not novel. In *State, ex rel., v. Storey,* supra, it was contended that the state superintendent of public instruction is an executive officer under our Constitution; that the legislature cannot confer legislative power upon an executive officer such as the state superintendent of public instruction. Mr. Justice Harvey, speaking for the court, said:

". . . Forceful as this argument is, it overlooks article 6 of our constitution dealing specifically with education, the pertinent portions of which read:

" 'The legislature shall encourage the promotion of intellectual, moral, scientific and agricultural improvement by establishing a uniform system of common schools, and schools of a higher grade, embracing normal, preparatory, collegiate and university department.' (Art. 6, § 2.)

" 'The state superintendent of public instruction shall have the general supervision of the . . . educational interests of the state, and perform such other duties as may be prescribed by law. . . .' (Art. 6, § 1.)

"By these provisions of the constitution the legislature was required to establish a uniform system of common schools and schools of a higher grade. Realizing that many questions pertaining to educational matters naturally would arise, and which would need the attention of a competent official who could investigate and determine what is best to be done, our constitution gave to the superintendent of public instruction 'the general supervision of the . . . educational interests of the state,' and specifically authorized him to 'perform such other duties as may be prescribed by law,' without limiting those duties to such as might be classified as executive or administrative only. *He is authorized to perform any duties pertaining to the educational interests of the state which the legislature deems wise and prudent to impose upon him. Under these provisions it cannot be said that the legislature is without authority to authorize the state superintendent of public instruction to perform duties, or determine questions, with respect to the educational interests of the state which, in the general classification of powers of government, would be regarded as legislative in character.*" (l. c. 316, 317.) (Emphasis supplied.)

Far from overruling the *Storey* case, the *Hines* case reaffirmed its holding, and in the opinion it was said:

". . . the legislature can confer legislative power upon the state superintendent of public instruction because the constitution 'specifically authorized him to "perform such other duties as may be prescribed by law," without limiting those duties to such as might be classified as executive or administrative only'." (l. c. 304.)

The legislature has plenary power over the establishment, alteration and disorganization of school districts. It may delegate any part of that power to the state superintendent of public instruction. Interested citizens may question the wisdom of the legislature in authorizing the state superintendent to reorganize the school districts of the state, but the question of the wisdom or necessity of a law is for the legislature and not for the courts. (*State, ex rel., v. City of Pittsburg,* 188 Kan. 612, 623, 364 P. 2d 71.) None of the powers delegated by the act are offensive to Article 2, Section 1 of our Constitution.

Appellants contend that the act is vague and indefinite; that those required to perform duties thereunder do not know what to do. This contention is not borne out by the facts. This court takes judicial notice that the school districts of Kansas have been virtually reorganized by the state superintendent under the act. The 1965 regular session of the legislature saw fit to approve establishment of some 284 of the new districts comprising nearly 90 percent of the territory of the state and 75 percent of the pupils. Local bodies studied, reported, and recommended under the statute; the state superintendent acted under it; the purposes of the act have been

carried out, and to a large extent the act has been executed. We hold that the act is sufficiently clear and definite to be valid.

Appellants next contend that the act amends and repeals existing laws without referring to them. K. S. A. 72-6750 (amended by the 1965 legislature) imposed additional requirements on transfer of school territory and issuance of school bonds. The legislature apparently felt additional restraints would be beneficial in carrying out the school reorganization. Such provisions are common and have been specifically approved by this court. (*State, ex rel., v. Rural High-school District,* 126 Kan. 166, 170, 171, 267 Pac. 2) The act does not violate Article 2, Section 16 of our Constitution.

Appellants seems to make a somewhat vague complaint about uniformity of the enactment. This court is of the opinion that a very beneficial measure of uniformity is being accomplished for the school system of Kansas under the school reorganization. It could hardly have been less uniform than at the time the legislature acted. The legislature in passing this act was carrying out its constitutional obligation under Article 6, Section 2 of the Constitution.

Having fully examined the record, we are of the opinion that Chapter 393 of the 1963 Session Laws of Kansas (now K. S. A. 72-6734 *et seq.*, as amended) is valid, and the district court did not err in entering judgment for the defendant.

The judgment is affirmed.